**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-01894-MSK-NYW

HAMPDEN AUTO BODY CO., a Colorado corporation

      Plaintiff,

v.

OWNERS INSURANCE COMPANY, an Ohio
corporation

      Defendant.

---

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Defendant Owners Insurance Company ("Defendant" or "Owners"), by and through its

attorneys Adam P. O'Brien and Andrew K. Lavin of the law firm of Wells, Anderson & Race,

LLC, submits this Motion for Summary Judgment and states as follows:

## I.    <u>INTRODUCTION</u>

After a lightning strike on May 30, 2014, Plaintiff Hampden Auto Body Co. made an

insurance claim to its insurer, Owners, for property damage. Hampden subsequently made a

claim under the same policy for alleged lost business income caused by the same occurrence.

Hampden alleges that Owners failed to pay all amounts owed under the policy,

unreasonably delayed full payment for Hampden's claims, and committed common law bad

faith. Hampden's claims fail as a matter of law based on Hampden's failure to comply with its

insurance policy, including cooperating with Owners and filing suit in accordance with the

policy's Legal Action Against Us provision, and Hampden's failure to disclose expert testimony supporting its complex claims.

## II.   ARGUMENT

Hampden asserts parallel claims of breach of contract, common law insurance bad faith, and statutory unreasonable delay or denial for its property and business income claims. (*See* Complaint, Doc. 4.)  Owners seeks summary judgment on each of Hampden's six claims and on Owners' affirmative defense of statute of limitations.[1]

**A.   Defendant is entitled to Summary Judgment on Claim 1: Breach of Contract – Property Damage**

   1.   Burden of Proof and Elements

Hampden has the burden of proof to establish its breach of contract claim.  *W. Distrib. Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo. 1992).  The elements of breach of contract are: (1) the existence of a contract; (2) performance by the plaintiff; (3) failure to perform by the defendant; and (4) damages.  *Id.*

   2.   Elements that cannot be proven by Hampden

Element 2: *Hampden cannot demonstrate that it performed its duties under its insurance policy.*

Hampden's insurance policy contains the following condition:

   D.   LEGAL ACTION AGAINST US

      No one may bring a legal action against us under this Coverage Part unless:

---

[1] This Court is well versed in the applicable summary judgment standard. *See* Fed. R. Civ. P. 56; *In re Riobzyme Pharmaceuticals, Inc. Securities Litigation*, 209 F.Supp.2d 1106 (D. Colo. 2002). Colorado substantive law applies in this diversity case. *See Burnham v. Humphrey Hosp. Reit Tr., Inc.*, 403 F.3d 709, 712 (10th Cir. 2005) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)); *see Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1223 (10th Cir. 2016). Hampden's claims are based on an insurance insuring property in Colorado. Colorado law also applies for statute of limitations purposes. *See Burnham*, 403 F.3d at 712.

1.      There has been full compliance with all of the terms of this Coverage Part; and

2.      The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

Exhibit A, Commercial Property Conditions.[2]

Hampden's breach of contract claim is time-barred under the policy's unambiguous language. Insurance policy limitation periods are enforceable. *See Bagher v. Auto-Owners Ins. Co.*, No. 1:12-CV-00980-REB, 2013 WL 3010694, at *3 (D. Colo. June 18, 2013); *Cheyenne Hotel Investments, LLC v. Colorado Cas. Ins. Co.*, No. 13-CV-02027-RPM, 2014 WL 2207082, at *2 (D. Colo. May 28, 2014); *In re Centrix Fin., LLC*, No. 09-CV-01542-PAB-CBS, 2015 WL 3475730, at *2 (D. Colo. June 1, 2015). Parties to an insurance policy contract can reduce the statutory limitation period, provided that the period in which the action must be brought is reasonable and is not prohibited by statute. *See Grant Family Farms, Inc. v. Colorado Farm Bureau Mut. Ins. Co.,* 155 P.3d 537, 539 (Colo. App. 2006); *Capitol Fixture & Supply Co. v. Nat'l Fire Ins. Co.,* 131 Colo. 64, 68, 279 P.2d 435, 437 (Colo. 1955). Contractual two-year limitation periods are reasonable and enforceable. *See In re Centrix*, 2015 WL 3475730 at *2.[3]

It is undisputed that the loss occurred on May 30, 2014. (*See* Complaint ¶ 11, Doc. 4). Hampden filed its Complaint on April 30, 2017. (*See id*. at p. 1.)  Hampden failed to timely file

---

[2] The Loss Conditions and Commercial Property Conditions also apply to the Business Income and Extra Expense coverage form. *See* Ex. A, Business Income and Extra Expense § 3.

[3] The Colorado legislature has abrogated contractual limitations periods for homeowner's insurance policies that purport to require suit to be filed within a period of time that is shorter than the applicable statute of limitations. *See Schniedwind v. Am. Family Mut. Ins. Co.*, 157 F. Supp. 3d 944, 947 (D. Colo. 2016) (discussing C.R.S. § 10-4-110.8(12) (2018)). Hampden's policy is not a homeowner's policy, and § 10-4-110.8(12) is inapplicable.

suit in accordance with the policy's unambiguous limitation condition. Hampden's breach of contract claim thus fails as a matter of law and must be dismissed.

> <u>Element 3</u>:     *Hampden cannot demonstrate that Owners failed to perform under the insurance policy related to coverage for property damage.*

Hampden admits that the property that was damaged by the lightning strike, including a paint drying system, has been repaired—the system was repaired and restored to full capacity. (*See* Exhibit B, Responses to Written Discovery, Request for Admission No. 6; *see also* Exhibit C, Fed. R. Civ. P. 30(b)(6) Deposition of Hampden at 20:10-18; 88:2-6.) Moreover, Hampden admits that Owners reimbursed it for all incurred bills for repair work due to the incident. (*See* Ex. B, Responses to Written Discovery, Request for Admission No. 2.) Hampden nevertheless claims, contrary to the policy, that it is owed replacement costs as damage.

Hampden's claim is belied by the terms of Policy, which states:

> 4.     Loss Payment
>
>> a.     In the event of loss or damage covered by this Coverage Form, at our option, we will either:
>>
>>> (1) Pay the value or loss or damaged property;
>>>
>>> (2) Pay the cost of <u>repairing</u> or replacing the lost or damaged property;
>>>
>>> (3) Take all or part of the property at an agreed or appraised value; <u>or</u>
>>>
>>> (4) Repair, rebuild or replace the property with other property of like kind and quality.

*See* Ex. A, Building and Personal Property Coverage Form, E. Loss Conditions. (emphasis added).

Owners had no obligation to buy Hampden a new paint drying system. Owners was well within its policy rights to repair the system, rather than paying for a new one. Hampden acknowledges this fact, stating: "Owners had a duty to repair *or* replace all damaged property." (*See* Ex. B, Hampden's Response to Written Discovery, Interrogatory 6.) Moreover, as the damaged property was never replaced, there are no replacement costs for Owners to reimburse. Because it is undisputed that the system was repaired, and that Owners paid all repair costs, Hampden's breach of contract claim should be dismissed for this independent reason.

**B.    Defendant is entitled to Summary Judgment on Claim 2: Common Law Bad Faith – Property Damage**

1.    <u>Burden of Proof and Elements</u>

To establish a common law bad faith breach of contract in this first-party insurance claim, Hampden has the burden to show that Owners: (1) acted unreasonably under the circumstances; and (2) knowingly or recklessly disregarded the validity of Hampden's claim. *See Goodson v. Am. Standard Ins. Co. of Wisconsin*, 89 P.3d 409, 415 (Colo. 2004); *see also* C.R.S. § 10-3-1113(3) (2018). The reasonableness of an insurer's conduct is measured under an objective standard of conduct in the insurance industry and evaluated based only on the information before the insurer at the time of its decision. *See Goodson*, 89 P.3d at 415; *Burgess v. Mid-Century Ins. Co.,* 841 P.2d 325, 329 (Colo. App. 1992).

 "Under Colorado law, the party asserting the bad faith claim has the burden of proof, and thus the burden of demonstrating the <u>un</u>reasonableness of the insurer's actions lies with the <u>insured</u>." *Green Earth Wellness Ctr., LLC v. Atain Specialty Ins. Co.*, 163 F. Supp. 3d 821, 836 (D. Colo. 2016) (*citing Pham v. State Farm Mut. Automobile Ins. Co.*, 70 P.3d 567, 572 (Colo. App. 2003)) (*emphasis added*).  In order to prove that an insurer acted unreasonably, "an insured

must come forward with evidence (typically from an expert) that the insurer's conduct violated industry standards" based on an objective determination of reasonableness. *See id.* (*citing Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 524 (Colo. App. 2008)); *see also Zolman v. Pinnacol Assurance,* 261 P.3d 490, 496 (Colo. App. 2011) (in reviewing a bad faith claim, "the reasonableness of an insurer's conduct is measured objectively based on industry standards").

A bad faith claim does not turn on whether the insurer was ultimately correct in its claim handling decisions but, instead, on whether the insurer intentionally denied or failed to process or pay a claim without a reasonable basis. *See Burgess*, 841 P.2d at 329. When there are no genuine issues of material fact, reasonableness may be determined as a matter of law. *Vaccaro v. American Family Insurance*, 275 P.3d 750, 759 (Colo. 2012).

     2.     <u>Elements that cannot be proven by Hampden</u>

<u>Element 1</u>: *Hampden cannot prove that Owners acted unreasonably.*

Hampden's bad faith claim (like its statutory claim, discussed below) is premised on the allegation that Owners delayed in repairing Hampden's paint drying system after the lightning strike. (*See* Complaint ¶ 60, Doc. 4). Though Hamden acknowledges that the repair of drying system was "extremely difficult" due to the age of the system (*see* Complaint, Doc. 4, ¶ 16), Hampden claims that the approximately fifteen-month repair time was unreasonable. (*See* Complaint, Doc. 4, ¶¶ 38, 59-62.)[4] Hampden can present no evidence regarding what a reasonable time period would be for repair of this unique equipment.

---

[4] To the extent Hampden's bad faith claim is premised in Owners' alleged failure to *replace* the drying system, the claim likewise fails as a matter of law. As discussed above, the Policy granted Owners the right to pay for the costs to repair the system. There is no dispute that the system was repaired and restored to full capacity. (*See* Ex. B, Responses to Written Discovery, Request for Admission No. 6; Ex. C, Fed. R. Civ. P. 30(b)(6) Deposition of Hampden at 20:10-18; 88:2-6.)

Hampden's property claim involved a complex, unique piece of equipment that was rendered inoperable after a lightning strike. (*See* Doc. 4, Complaint, ¶¶ 12-19.) Whether Owners' conduct in investigating the property damage and repairing it was unreasonable is not within the "common knowledge and experience of ordinary people"—expert testimony is therefore required to establish the standard of care for insurance bad faith. *See Fisher v. State Farm Mut. Auto. Ins. Co.*, ___ P.3d ___, ___, 2015 COA 57, ¶ 54, *aff'd State Farm Mut. Auto. Ins. Co. v. Fisher,* 2018 CO 39; *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 344 (Colo. 2004). Indeed, expert testimony is needed where the reasonableness of an insurer's investigation involves technical questions and requires additional professional training beyond the knowledge of the average juror. *See Mathison v. United States*, 619 F. App'x 691, 694 (10th Cir. 2015) (*citing United Blood Servs. v. Quintana,* 827 P.2d 509, 520 (Colo. 1992)).

Hampden can put forth no evidence of the industry standard of care with respect to the property claim. Hampden has not designated any expert to provide opinions with respect to the insurance industry, claim handling, or repair issues. (*See* Exhibit D, Hampden's Expert Disclosure.)

Though experts may not be required in cases involving more common occurrences such as automobile accidents and related coverage, *see, e.g., MacKinney v. Allstate Fire & Cas. Ins. Co.*, No. 16-CV-01447-NYW, 2017 WL 3397361, at *6 (D. Colo. Aug. 8, 2017); *Allen*, 102 P.3d at 345), complex claims involving lightning strikes to industrial equipment and the factors involved in evaluating such claims and repairing such equipment are matters outside the common knowledge and experience of ordinary persons. Without the testimony of an expert,

Hampden cannot meet its burden of proof in its common law claim. Hampden's common law bad faith claim should be dismissed.[5]

In addition, the facts show that Owners acted reasonably. It is undisputed that Hampden retained its own electrician to work on the property and that Owners reimbursed the electrician's bills.  (Ex. C, Fed. R. Civ. P. 30(b)(6) Deposition of Hampden at 9:25-15:3.) Hampden retained additional contractors, who Owners also reimbursed. (*See id*. at 15:7-17:9; *see also* Exhibit E, July 11, 2014 and August 7, 2014 Email Correspondences from Mr. Ross (demonstrating his control of the process).)  On September 4, 2014, Mr. Ross stated, "Attached is the final invoice on our lighting strike claim. . . I think we can now close this claim, we are back to normal." (*See* Exhibit F, September 4, 2014 Email Correspondence from Mr. Ross.) A couple weeks later, on September 23, 2014, Hampden completed its Proof of Loss, which was paid. (*See* Exhibit G, Proof of Loss; *see also* Ex. C, Fed. R. Civ. P. 30(b)(6) Deposition of Hampden at 77:9-80:3.) Hampden never submitted a revised Proof of Loss. (*See id*.)

Months passed and then on March 16, 2015, Hampden informed Owners that it was still "chasing problems" related to the lightning strike; Mr. Ross indicated that he was unsure if a motherboard could be purchased to fix the IWATA drying system. (*See* Exhibit H, March 16, 2016, Email Correspondence from Mr. Ross.)  He stated that he would email a quote for the IWATA system when he had more information.  (*See id*.)  Then, on April 30, 2015, Hampden

---

[5] Hampden's claim for non-economic damages also fails as Hampden is a corporation. *See TLC Realty 1 LLC v. Belfor USA Grp., Inc.*, No. 3:13-CV-56, 2016 WL 1730712, at *1 (S.D. Ohio Feb. 3, 2016); *see also, e.g., Cangelosi v. New Orleans Hurricane Shutter and Window, L.L.C.*, No. 12–427, 2012 WL 5613403, at *2 (E.D. La. Nov. 15, 2012) ("limited liability compan[ies] . . . cannot suffer emotional distress as a matter of law"); *HM Hotel Props. v. Peerless Indemn. Ins. Co.*, 874 F.Supp.2d 850, 854 (D. Ariz. 2012) ("[m]ultiple federal courts . . . have found that a corporate plaintiff cannot suffer emotional distress because 'a corporation lacks the cognizant ability to experience emotions'"); *One River Place Condo. Ass'n, Inc. v. Axis Surplus Ins. Co.*, 629 F. Supp. 2d 613, 617 (E.D. La. 2009) (neither corporations nor limited liability companies can incur damages for mental anguish or emotional distress).

informed Owners for the first time that the makers of the drying system were no longer in business and requested Owners' assistance in obtaining a new system as a replacement under the policy.  (*See* Complaint, ¶ 29, Doc. 4; *see also* Exhibit I, April 30, 2016 Email Correspondence from Mr. Ross.) On June 1, 2015, Hampden agreed with Owners that Owners would have an engineer inspect the system.  (Exhibit J, June 1 & 3, 2015 Email Correspondences from Mr. Ross and Mr. Hannon; *see also* Complaint, ¶ 32, Doc. 4.)

Owners' second engineer inspected the system on June 2, 2015. (Complaint, ¶ 33, Doc. 4.) Then, on June 3, 2015, Owners informed Hampden that it would address replacement of the system upon receipt of the engineer's report confirming that the system could not be repaired. (Ex. J, June 1 & 3, 2015 Email Correspondence; *see also* Complaint, ¶ 34, Doc. 4.)  On June 29, 2015, Owners updated Hampden on the engineer's process.  (Exhibit K, June 29, 2015 Email Correspondence from Mr. Hannon.)  The engineer was able to determine an appropriate repair and with Owners' approval ordered the replacement parts.  On September 3, 2015, with the part Owners' engineer acquired, the remainder of the drying system was repaired and restored to full operational capacity by Hampden's electrician.  (*See* Ex. B, Responses to Written Discovery, Request for Admission No. 6; Ex. C, Fed. R. Civ. P. 30(b)(6) Deposition of Hampden at 20:10-18; 88:2-6; *see also* Exhibit L, September 8, 2015 Email Correspondence from Mr. Ross.)

In summary, Owners conducted numerous investigations of the damaged property, hired multiple consultants, and paid all submitted invoices. This included removing a motherboard for inspection and replacement.  (Ex. C, Fed. R. Civ. P. 30(b)(6) Deposition of Hampden at 20:10-21:11).  Contrary to Hampden's assertion that the property was not repairable, the property was repaired. Hampden cannot even state how soon it should have been repaired. (*See* Ex. B,

Responses to Written Discovery, Interrogatory 2.)  Most notably, Hampden has disclosed no

expert to opine that Owners acted unreasonably or violated any industry standard with respect to

repairing the paint drying system. *See Green Earth Wellness*, 163 F. Supp. 3d at 836. There is a

lack of evidence that Owners acted unreasonably, and Hampden's claim fails as a matter of law.

Element 2:  *Hampden cannot prove that Owners knowingly or recklessly disregarded the*

*validity of Hampden's claim of property damage.*

 "Speculation and conjecture are insufficient to create a genuine issue of material fact" as

to this necessary element of Hampden's bad faith claim.  *See MacKinney*, 2017 WL 3397361, at

*5; *Windsor Court, LLC v. Am. Family Mut. Ins. Co.*, No. 11-CV-01904-CMA-KLM, 2013 WL

799589, at *3 (D. Colo. Mar. 5, 2013) (the plaintiff failed to designate any facts establishing a

genuine issue for trial as to the necessary element that Defendant knowingly or recklessly

disregarded the validity of the plaintiff's claim).

Upon receipt of Hampden's claim, Owners began investigating the claim, hiring

engineers, and working with Hampden's contractors, who together restored the heat or drying

lamp system to 50% capacity by, at least, September 4, 2014, and to full capacity by September

3, 2015.  *See supra* Sec. II, B, 2, Element 1. There is no evidence that Owners knowingly or

recklessly disregarded Hampden's claim.  Hampden's mere skepticism about whether the system

*could be* repaired does not support Hamden's claim, particularly given that the system *was*

repaired.  Furthermore, as discussed above, Hampden has no expert to opine that Owners acted

unreasonably, much less that Owners knowingly or recklessly disregarded Hampden's claim.

This further supports dismissal.

**C.    Defendant is entitled to Summary Judgment on Claim 3: C.R.S §§ 10-3-1115 and 1116 – Property Damage**

1.    Burden of Proof and Elements

Hampden has the burden of establishing a statutory claim under §§ 10-3-1115 / 1116, C.R.S. *See generally Kisselman v. American Family Mut. Ins. Co.*, 292 P.3d 964, 975 (Colo. App. 2011).  Section 10-3-1115(1)(a), C.R.S. provides that a "person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant."  Therefore, Hampden must establish that (1) Owners is a person engaged in the business of insurance, (2) Owners unreasonably delayed or denied payment of a claim for benefits owed to Hampden, and (3) Hampden is a first-party claimant.

2.    Elements that cannot be proven by Hampden

Element 2: *Hampden cannot prove that Owners unreasonably delayed or denied payment of Hampden's claim of property damage.*

Hampden relies on the same factual allegations and theories to support its statutory and common law bad faith claims. As discussed above and incorporated here, Hampden cannot present a genuine issue of material fact that Owners acted unreasonably, particularly given the lack of expert testimony to support Hampden's complex insurance claim. In fact, Hampden has admitted that no portion of the payments for the amounts claimed in the proof of loss were delayed or denied. (*See* Ex. C, Hampden 30(b)(6) Deposition, at 79:5-11; Ex. B, Responses to Written Discovery, Request for Admission No. 2.) The claim must be dismissed.

**D.**      **Defendant is entitled to Summary Judgment on Claim 4: Breach of Contract – Loss of Business Income**

1.      <u>Burden of Proof and Elements</u>

Owners incorporates its statement regarding the burden of proof and elements set forth above with respect to Hampden's breach of contract claim related to property damage.

2.      <u>Elements that cannot be proven by Hampden</u>

<u>Element 2</u>: *Hampden cannot demonstrate that it performed its duties under its insurance policy.*

As discussed above and incorporated here, Hampden's insurance policy unambiguously required this lawsuit to be commenced within two years of when the physical loss or damage occurred. *See supra* Sec. II.A.2. Suit was filed beyond the two-year limitation, and the breach of contract loss of business income claim.

The policy also provides:

3.      Duties in the Event of Loss or damage

   a.      You must see that the following are done in the event of loss or damage to Covered Property:

      …

      (7) Send as a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

      (8) Cooperate with us in the investigation or settlement of the claim.

Ex. A, Building and Personal Property Coverage Form, § E. Loss Conditions.[6]

_____

[6] The policy also states:

We will not pay for any loss or damage in any case of:

An insured forfeits its right to recover under an insurance policy when it fails to cooperate. *See Walker v. State Farm Fire & Cas. Co.*, No. 16-CV-00118-PAB-STV, 2017 WL 1386341, at *3–4 (D. Colo. Feb. 23, 2017), *report and recommendation adopted,* No. 16-CV-00118-PAB-STV, 2017 WL 1386346 (D. Colo. Mar. 17, 2017); *Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 564 (Colo. App. 2015).

While the issue of an insured's cooperation may sometimes involve a question of fact, if "the record can produce no other result, a court may determine the issue of non-cooperation as a matter of law." *Walker*, No. 16-CV-00118-PAB-STV, 2017 WL 1386341, at *3 (*quoting Hansen*, 779 P.2d at 1364).) An insured's failure to cooperate bars recovery where the insurer suffers a material and substantial disadvantage. *See id.*; *Ahmadi v. Allstate Ins. Co.*, 22 P.3d 576, 579 (Colo. App. 2001). Where the insured's failure to cooperate prevents the insurer from completing a reasonable investigation of the claim, prejudice should be found. *See id.* at *4. Specifically, "[w]hen the insured's failure to provide some of the requested records is undisputed, the court may determine their relevance to the insurer's investigation as a matter of law." *Id.*; *see also Edge Constr., LLC v. Owners Ins. Co.*, No. 14-CV-00912-MJW, 2015 WL 4035567, at *3 (D. Colo. June 29, 2015) (insured's failure to cooperate in a material and substantial respect bars recovery under insurance policy).

Hampden first failed to cooperate by not submitting a proof of loss as to the business income claim.  Hampden submitted one sworn Proof of Loss confirming that the physical loss

---

1.  Concealment or misrepresentation of a material fact . . .  committed by you or any other insured ("insured") at any time and relating to coverage under this policy.

Ex. A, Colorado Changes – Concealment, Misrepresentation or Fraud.

and damage occurred on May 30, 2014. (Ex. G, Proof of Loss; Ex. C, Hampden 30(b)(6) Deposition at 77:5-12.)  Hampden never submitted a proof of loss concerning the business income claim.  In fact, Hampden never submitted any verified claim as to business income and, therefore, failed to comply with its contractual duty to submit a proof of loss.

More troubling, there is no dispute that Hampden (and its expert Dr. Bernstein[7]) rely on Hampden's internet web traffic data to support its business income claim (and expert's opinion regarding the value of the claim). (Exhibit M, Deposition of Dr. Asaf Bernstein, 84:21-85:5, 88:8-90:19.)  It is likewise undisputed that such data was not provided to Owners (or Owner's expert Paul DeBoer of RGL Forensics) until well into litigation and after Owners' had disclosed its rebuttal expert report. (Exhibit N, Email Correspondence between Counsel Demonstrating when Rebuttal Report and Website Data were disclosed.)[8]

Owners retained Mr. DeBoer months prior to filing of this lawsuit in order to assist Owners' evaluation and valuation of Hampden's business income claim. During the fall of 2015 and winter of 2016, Mr. DeBoer gathered information from Hampden with respect to the business income claim. Mr. DeBoer issued a report on February 12, 2016, concluding that Hampden supported a business income loss amount of $221,193. (*See* Exhibit O, DeBoer Report.)

---

[7] Dr. Bernstein was disclosed as an expert to opine on the amount of alleged lost business income by Hamden. Dr. Bernstein offers no opinions with respect to whether Owners met the standard of care for an insurance company with respect to evaluating and paying Hampden's claim.

[8] Federal Rules of Civil Procedure 26 and 37 also preclude Hampden's use of the website date. Owners' reserves the right to seek preclusion of this evidence due to this discovery violation that is not justified nor harmless. *See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). Beyond the failure to provide the documents with initial disclosures, in the time between the disclosure of Dr. Bernstein's report and Mr. DeBoer's rebuttal report, undersigned requested the website data numerous times and it was not provided.

Hampden's Rule 30(b)(6) representative, Mike Ross, on January 30, 2018, testified that he was not aware of any relevant data or information that had not been provided to Mr. DeBoer at RGL. (Ex. C, Fed. R. Civ. P. 30(b)(6) Deposition at 30:7-11.) Mr. Ross also testified that Mr. DeBoer had asked for internet traffic data, but Mr. Ross could not confirm that the information was provided to Mr. DeBoer.  (*Id.* at 55:3-15.)

Notably, Hampden identified internet traffic data in its initial disclosures as a document or data that Hampden would rely on to support its claim on September 19, 2017.  (Exhibit P, Hampden's Initial Disclosures.) After Hampden failed to produce this information, and the issue was discussed at the Scheduling Conference, on September 26, 2017, Magistrate Judge Wang ordered Hampden to work with Owners to actually produce the documents. (*See* Courtroom Minutes/Minute Order, Doc. 16.)  Hampden yet again failed to produce any internet or website data. Nevertheless, Hampden finally produced the internet traffic data in response to written discovery after Owners had disclosed its rebuttal expert report. (Ex. N, Email Correspondence between Counsel; *see also* Ex. B, Hampden's Responses to Written Discovery, RFP 11.) Hampden's expert testified that this data was useful because it gave him a proxy for the demand for Hampden's services. (Ex. M, Deposition of Dr. Asaf Bernstein, 84:21-85:5.) And, by knowing demand outpaced capacity, he could calculate capacity and determine the lost income. (*See id.* at 88:8-90:19.)

There is no question that this data is therefore relevant and material to Hampden's business income claim. Indeed, Hampden's entire claim is founded on Dr. Bernstein's opinion with respect to the amount of lost business income, which in turn is founded in large part on Hampden's internet traffic data. Owners was prejudiced by not having this data when it

evaluated and valued Hampden's business income claim prior to litigation. It is further prejudiced as Owners' has had to defend extra-contractual claims supported by an expert who had unfettered access to data that Hampden concealed from Owners until after rebuttal expert disclosures were served. Because Hampden failed to cooperate (and concealed material information), its breach of contract claim for loss of business income should be dismissed.

**E.    Defendant is entitled to Summary Judgment on Claim 5: Common Law Bad Faith – Loss of Business Income**

      1.    <u>Burden of Proof and Elements</u>

Owners incorporates its statement of the burden of proof and elements set forth above with respect to Hampden's common law bad faith claim related to property damage.

      2.    <u>Elements that cannot be proven by Hampden</u>

<u>Element 1</u>:  *Hampden cannot prove that Owners acted unreasonably under the circumstances.*

The undisputed evidence shows that, after Hampden submitted a claim for lost business income under the policy, Owners hired an expert in forensic accounting to evaluate Hampden's claim, that the expert reviewed all of the documents provided by Hampden; and that based on the evaluation, the expert determined Hampden's loss of business income to be $221,193. (Ex. O, Mr. DeBoer's Report.) Owners paid the full $221,193.  (Ex. C, Fed. R. Civ. P. 30(b)(6) Deposition, 94:1-14.) Hampden cannot present any report it provided to Owners prior to litigation to consider in evaluating the claim. (Ex. B, Hampden's Responses to Written Discovery, RFAs 1, 5.)

Hampden does not dispute that Owners issued payment to Hampden on its claim for lost business income consistent with the sole expert evaluation of the claim.  (Ex. C, Fed. R. Civ. P.

30(b)(6) Deposition, 94:1-14.) *See Avalon Condo. Ass'n, Inc v. Secura Ins.*, No. 14-CV-00200-CMA-KMT, 2015 WL 5655528, at *5-6 (D. Colo. Sept. 25, 2015) (mere disagreement with an expert is insufficient to sustain a bad faith claim).  The crux of Hampden's claim is that Owners did not pay Hampden *enough*.  Yet, it is undisputed that Hampden did not provide its own expert to evaluate the loss until expert were disclosed in this case,[9] and Hampden does not point to any facts that could support its claim that Owners acted unreasonably under the circumstances.  Further, as discussed above, Hampden did not provide Owners information that its retained expert would subsequently rely upon during litigation.  *See supra*, Sec. II, D, 2.  Hampden's "mere disagreement as to the amount of payment that may be owing under the policy is insufficient" to sustain a bad faith claim. *Windsor Court,* 2013 WL 799589, at *3.

Further, Hampden has not designated an insurance industry expert who could testify that Owners' conduct was unreasonable. *See Goodson v. Am. Standard Ins. Co. of Wisconsin*, 89 P.3d 409, 415 (Colo. 2004) (aid of expert witnesses is often required in order to establish objective evidence of industry standards).  Because an insurance company's determination of a corporation's loss of business income is a matter that is outside the common knowledge of most jurors, Hampden cannot prove the *un*reasonableness of Owners' conduct under objective industry standards without expert testimony to support its claim.  *See Green Earth Wellness*, 163 F. Supp. 3d at 836; *cf. Allen*, 102 P.3d at 345.

As discussed above, Hampden's sole expert offers no opinion whatsoever with respect to whether Owners met the relevant industry standard of care. Even assuming Dr. Bernstein is

---

[9] Hampden's representative Mr. Ross indicated he was not an expert in evaluating his company's business loss. (See Ex. C, Fed. R. Civ. P. 30(b)(6) deposition, 7:12-19.)

admitted to opine regarding Hampden's loss of business income, his opinion was not available to

Owners nor part of the circumstances under which Owners issued payment.  *See Allen*, 102 P.3d

at 343 (reasonableness is measured under an objective standard of conduct in the insurance

industry and evaluated based only on information before the insurer at the time of its decision);

*Avalon*, 2015 WL 5655528, at *5 (discussing propriety of relying on consulting expert.).[10] There

is simply no evidence that Owners' evaluation of and payment for Hampden's lost business

income was unreasonable at the time those decisions were made.

Element 2:  *Hampden cannot prove that Owners knowingly or recklessly disregarded the*
*validity of Hampden's claim of loss of business income.*

Again, it is undisputed that, upon notice of Hampden's claim, Owners retained an expert

in forensic accounting to evaluate Hampden's claim of lost business income, issued to Hampden

a notice of intent to pay consistent with the expert's opinion and, receiving no other evaluation

from Hampden, issued payment to Hampden.  *See supra* Sec. II, E, 2. Element 1.

Hampden can point to no admissible evidence that Owners lacked a reasonable basis for

its decision at the time it was made.  *See Windsor Court,* 2013 WL 799589, at *3 (where the

plaintiff's pre-litigation estimate cited a figure for total roof repair but failed to identify basis for

the estimate, the estimate did not indicate Defendant lacked a reasonable basis for denying the

plaintiff's claim and "certainly did not go even further and demonstrate that Defendant acted

with knowledge of or reckless disregard for the fact that no reasonable basis existed for denying

the plaintiff's claim").  Regardless of whether Owners was ultimately correct in its evaluation of

---

[10] Recently, in an unpublished decision, the Colorado Court of Appeals noted an insurer's reliance on an expert it retained is not unreasonable when it is later supplied with contradictory reports.  *See Bell Advisors, LLC v. Am. Family Mut. Ins. Co.*, 16CA2081,¶ 20, attached hereto as Exhibit Q.

Hampden's claim, the undisputed facts demonstrate a reasonable basis for Owners' conduct. *See Burgess,* 841 P.2d at 329.

Nothing in the record suggests that Owners knowingly or recklessly disregarded Hampden's claim. *See MacKinney*, No. 16-CV-01447-NYW, 2017 WL 3397361, at *5 ("[s]peculation and conjecture are insufficient to create a genuine issue of material fact" as to whether Defendant knowingly or recklessly disregarded the validity of the plaintiff's claim, a necessary element of a bad faith claim); *Windsor Court,*, 2013 WL 799589, at *3 (The plaintiff failed to designate any facts establishing a genuine issue for trial as to the necessary element that the defendant knowingly or recklessly disregarded the validity of the plaintiff's claim). Hampden also cannot present the required expert testimony that Owners failed to meet the industry standard of care. Hampden's claim fails as a matter of law and should be dismissed.

**F.    Defendant is entitled to Summary Judgment on Claim 6: C.R.S. §§ 10-3-1115 and 1116 – Loss of Business Income**

1.    Burden of Proof and Elements

Owners incorporates its discussion of the burden of proof and elements set forth above with respect to Hampden's statutory claim related to property damage.

2.    Elements that cannot be proven by Hampden

Element 2:  *Hampden cannot prove that Defendant unreasonably delayed or denied payment for benefits owed to Hampden.*

Hampden again relies on the same allegations related to its common law bad faith claim to support its statutory claim. As discussed above and incorporated here, there is no evidence that Owners' evaluation of and payment for Hampden's business income claim was unreasonable at

the time those decisions occurred. Hampden's lack of expert opinion to show that Owners acted unreasonably further supports dismissal.

Hampden's allegations with respect to lost business income amount to nothing more than a valuation dispute. Hampden has conceded that the $221,193 payment was not delayed. (Ex. C, Fed. R. Civ. P. 30(b)(6) Deposition of Hampden, at 100:6-14.) Hampden simply disputes the amount of the payment. (*See id.*) Given the circumstances here, where no proof of loss on business income was submitted, an expert consultant hired by Owners generated a report, Hampden did not respond with its own report, and information Hampden's litigation expert relies upon was not presented to Owners, such a dispute does not support a statutory delay claim (much less common law bad faith). *See Pfeiffer v. State Farm*, 940 P.2d 967, 970 (Colo. 1996) (conduct in delay or denial is based upon information before the insurer at the time its decisions or conduct occur). And, as discussed above, Hampden's disclosure of an expert report well into litigation does not support an unreasonable delay claim that was filed prior to the time the report was generated or produced to Owners.

**G.     Owners is entitled to Summary Judgment on its Affirmative Defense of Statute of Limitations as to Claims 3 and 6: Statutory Bad Faith**

1.     Burden of Proof and Elements

The statute of limitations is an affirmative defense on which Owners bears the burden of proof. *See* Fed. R. Civ. P. 8; *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1298 (10th Cir. 2018).

      2.     <u>The undisputed facts show that Hampden's statutory claims are time barred under the applicable one-year statute of limitations.</u>

Insofar as Hampden is seeking to impose upon Owners the penalties proscribed under § 10-3-1116(1) due to its alleged wrongful denial of its claim, the applicable statute of limitation is one year from the date of the accrual of the claim. *See* § 13-80-103, C.R.S. (2017); *see Hernandez v. Am. Std. Ins. Co. of Wisc.*, No. 11-CV-03076-RBJ, 2013 WL 6633392, at *4 (D. Colo. Dec. 16, 2013) ("My view that the statute creates a penalty is bolstered as well by the fact that it has been viewed as a penalty in several state and federal decisions.").[11]  This statutory provision provides as follows:

    (1)     The following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within one year after the cause of action accrues, and not thereafter:

                       * * *

    (d)     All actions for any penalty or forfeiture of any penal statutes;

C.R.S. § 13-80-103(1)(d), C.R.S. (2017).

Claims brought under §§ 10-3-1115 and 10-3-1116, if successful, would result in the imposition of a double-damages statutory penalty. *See* C.R.S. § 10-3-1116(1) (2017) (allowing recovery of "reasonable attorney fees and court costs and two times the covered benefit"). The

---

[11] The Colorado Supreme Court has not yet answered the question, certified to and accepted by it, of whether claims brought pursuant to C.R.S. §§ 10-3-1115 and 10–3–1116 are penal and, thus, subject to the one-year statute of limitations found in Colorado Revised Statutes § 13–80–103(1)(d).  *See Rooftop Restorations, Inc. v. Am. Family Mut. Ins. Co.*, No. 17SA31 (Colo. Mar. 3, 2017); *Rooftop Restorations, Inc. v. Am. Family Mut. Ins. Co.*, No. 15–cv–02560–WJM–STV, 2017 WL 514060, at *3 (D. Colo. Feb. 8, 2017). The Colorado Supreme Court has since granted certiorari review in *American Family v. Barriga*, No. 15SC934 (Colo.), and *Guarantee Trust Life v. Estate of Casper*, Case No. 17SC2 (Colo.), both of which raise similar issues. The Colorado Supreme Court is holding the certified question case, 2017SA31, in abeyance pending resolution of *American Family* and *Guarantee Trust Life*. *See Rooftop Restorations, Inc.*, No. 15–cv–02560–WJM–STV, Docket No. 42 (order).

Colorado Supreme Court set forth a three-part test for determining whether a statute constitutes a penalty for purposes of applying the correct statute of limitations:

(1)    the statute asserted a new and distinct cause of action;
(2)    the claim would allow recovery without proof of actual damages; and
(3)    the claim would allow an award in excess of actual damages.

*See Kruse v. McKenna*, 178 P.3d 1198, 1201 (Colo. 2008); *see also Palmer v. A.H. Robins Co.*, 684 P.2d 187, 214 (Colo. 1984).

In applying these three factors to §§ 10-3-1115(1)(a), (2) and 10-3-1116(1), it is apparent that these statutes impose a penalty. First, the statutes create a new and distinct cause of action. *See*, *e.g.*, *Vaccaro v. Am. Family Ins. Grp.*, 2012 COA 9M, ¶ 19, 275 P.3d 750, 756. Second, the statutes do not require proof of actual damages as a condition precedent to recovery. *Kruse*, 178 P.3d at 1201. Section 10-3-1116 does not require any proof of actual damages, as the only required showing is that the insurance company delayed or denied payment of covered benefits without a reasonable basis. Section 10-3-1115(1)(a); *see also* CJI-Civ. 4th 25:4; *cf. Fisher v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 57, ¶ 25. Third, the statute must impose a penalty in excess of actual damages. *Kruse*, 178 P.3d at 1201. Section 10-3-1116 provides for such a penalty insofar as a successful claim may recover actual damages in addition to "reasonable attorney fees and court costs and two times the covered benefit." Section 10-3-1116(1).

A cause of action accrues under Colorado law on the date when "the injury, loss, damage, or conduct giving rise to the cause of action is discovered or should have been discovered by the exercise of reasonable diligence."  C.R.S. § 13–80–108(8); *see also Murry v. GuideOne Specialty Mut. Ins. Co.*, 194 P.3d 489, 491 (Colo. App. 2008). "A bad faith cause of action accrues when both the nature of the injury and its causes are known or should be known through

22

the exercise of reasonable diligence." *Cork v. Sentry Ins.*, 194 P.3d 422, 427 (Colo. App. 2008) (citing C.R.S. § 13–80–108(1)).

In Claim 3: Statutory Bad Faith – Property Damage, the injury alleged was that Owners refused to replace the heat lamp and drying system upon Hamden's demand.  After Hampden made its claim under the policy on May 30, 2014, Owners initiated investigation and repair of the system, and persisted in its efforts to repair the system until it was fully repaired and operable on September 3, 2015.  (*See* supra, Sec. I, B, 2; *see also* Complaint, ¶ 38, Doc. 4.) This claim accrued, at the latest, as of September 3, 2015, when Hampden knew or should have known that Owners intended to repair the system, rather than replace it as Hampden demanded, since the repair was complete.  *See Cork* 194 P.3d at 427; *see also Ermentraut v. State Farm Fire & Cas. Co.*, No. 14–cv–00061–RM–KLM, 2016 WL 9735723, at *4 (D. Colo. Sept. 26, 2016) (the plaintiff's claim accrued when the plaintiff thought the insurer was delaying and had performed an inaccurate appraisal and the insurer refused to provide a new roof); *Gargano v. Owners Ins. Co.*, 623 Fed.Appx. 921, 930 (10th Cir. 2015) (unpublished) (finding the district court did not abuse its discretion in concluding that the plaintiff's statutory bad faith claim accrued when, after ten months, the plaintiff should have known that the insurance company was unreasonably delaying the processing of her claim).  Hampden's claim is time-barred because it was not filed on or before September 3, 2016.  See §§ 13–80–108(1); 13–80–103(d); *Cork*, 194 P.3d at 427.

In Claim 6: Statutory Bad Faith – Loss of Business Income, the bad faith complained of was Owners' notice to pay Hampden $221,193 consistent with Owners' expert's evaluation, upon Hampden's demand for payment of lost business income.  At that point, "the elements of the tort [were] satisfied..., and the continuing condition of nonpayment cannot be a predicate to a

bad faith cause of action." *Cork*, 194 P.3d at 428, quoting *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1142 (Colo. 1984).  Mr. Ross of Hampden acquired the report, opining that there was a $221,193 business loss, prior to March 1, 2016.  (*See* Exhibit R, March 1, 2016 Email Correspondence from Mr. Ross.) Owners position on paying pursuant to this report never varied, and Hampden knew or should have known that Owners had processed its claim and refused additional payment.  Hampden has provided no evidence that, at any other time, it learned any other information relevant to whether this was an unreasonable delay or denial of its claim of lost business income. Hampden knew or should have known that Owners was allegedly unreasonably delaying or denying its claim no later than March 1, 2016.  Owners' continued refusal to pay a different amount or have its expert reevaluate the claim after that point did not create a new cause of action.  *See Ermentraut*, 2016 WL 9735723, at *4, citing *Cork*, 194 P.3d at 427. Accordingly, Hampden's claim accrued on or before March 1, 2016, and it is time-barred because it was not filed on or before March 1, 2017.  See §§ 13–80–108(1); 13–80–103(d); *Cork*, 194 P.3d at 427; *see also* Complaint, Doc 4.

## III.    CONCLUSION

Hampden's claims fail as a matter of law, and Owners is entitled to summary judgment on all claims.  Additionally, Owners has proved its affirmative defense of statute of limitations as to Claim 3 and Claim 6, entitling it to summary judgment on that defense.

Dated this 21st day of May, 2018.

Respectfully submitted,

WELLS, ANDERSON & RACE, LLC

*S/Adam P. O'Brien*
Adam P. O'Brien
Andrew K. Lavin
1700 Broadway, Suite 1020
Denver, CO 80290
Telephone: (303) 830-1212
E-mail: aobrien@warllc.com;
dlavin@warllc.com
*Attorneys for Defendant Owners Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of May, 2018, I electronically filed the foregoing **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court, using the CM/ECF System, which will send notification of such filing to the following e-mail addresses:

Edward Milo Schwab, Esq.  (milo@schwablegal.com)
Schwab Legal, LLC
1444 Blake Street
Denver, CO 80202
*Attorneys for Plaintiff Hampden Auto Body Co.*

*S/Maureen Wenz*
Email:  mwenz@warllc.com