IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 17-CV-1894-MSK-SKC

**HAMPDEN AUTO BODY CO.,**

    Plaintiff,

*v.*

**AUTO-OWNERS INSURANCE CO.,**

    Defendant.

---

**OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court upon the Defendant's Motion for Summary Judgment (**# 35**), the Plaintiff's Response (**# 44**), and the Defendant's Reply (**# 50**). For the reasons that follow, the motion is granted in part.

### I. JURISDICTION

The Court exercises jurisdiction under 28 U.S.C. § 1332.

### II. BACKGROUND[1]

This is a case in which the Plaintiff, Hampden Auto Body Co (Hampden)., seeks to recover insurance benefits for property damage and loss of business income. Hampden owns a business in Denver, Colorado, that was insured under an insurance policy (Policy) issued by Defendant Auto-Owners Insurance Co. (Owners) In May 2014, Hampden's paint drying system was damaged in a by a lightning strike. Hampden submitted a claim to Owners, but various

---

[1] This is a summary of the undisputed facts. To the extent necessary and appropriate, the evidence presented is discussed more fully in the Court's analysis. All disputed facts are viewed in the light most favorable to Hampden, the nonmoving party. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

1

communications over the course of the next year were ignored. Eventually, Owners inspected the paint-drying system in June 2015 and paid for its repair. With regard to Hampden's business-income claim, Owners determined a loss of $221,193.

Hampden brought this suit in May 2017, asserting the following causes of action: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) a violation of C.R.S. §§ 10-3-1115, 1116 based on unreasonable delay of the claim.[2] Owners now moves for summary judgment on all claims (**# 35**).

### III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

---

[2] Each of these claims is asserted on the handling of both Hampden's insurance claims for property damage and loss of business income. The parties appear to agree that each of these insurance claims form separate bases for Hampden's causes of action such that there are six causes of action. The Court treats them as three claims.

2

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus. Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### IV.  DISCUSSION

Owners moves for summary judgment on all claims. In viewing the parties' arguments, it is helpful to keep in mind two provisions of the Policy. First, as to the loss payment:

> In the event of loss or damage covered by this Coverage Form, at our option, we will either:
>
> (1)  Pay the value of the loss or damaged property;
> (2)  Pay the cost of repairing or replacing the lost or damaged property;
> (3)  Take all or any part of the property at an agreed or appraised value; or
> (4)  Repair, rebuild or replace the property with other property of like kind and quality.

(**# 35-1 at 14**.)

3

Second, the Policy limits legal action taken against the insurer unless there has been full compliance with the Policy and the "action is brought within 2 years after the date on which the direct physical loss or damage occurred." (**# 35-1 at 20**.)

In interpreting these provisions, the Court is mindful that Colorado law requires it to construe them according to their ordinary language (absent a showing that the parties jointly intended the language to have a different meaning). *Ace Am. Ins. Co. v. Dish Network LLC*, 883 F.3d 881, 887 (10th Cir. 2018).

## A. Breach of Contract

Owners contends that claims for breach of contract are untimely, relying upon the provision in the Policy requiring that any legal action against Owners be "brought within 2 years after the date on which the direct physical loss or damage occurred." (**# 35-1 at 20**.) Hampden concedes that its breach-of-contract claim for property-damage losses is untimely, but contends that its breach-of-contract claim based on a loss of business income was timely brought. Hampden argues that the "final day of damage was May 29, 2015" (**# 44 at 6**), and because this suit was filed on April 30, 2017, it was timely under the Policy.

The Policy language pertinent to filing of an action keys to "direct physical loss or damage", which suggests a definitive date upon which a particular event occurs. Owners argues that the business loss calculation is the same as that for property damage – two years from the lightning strike. Hampden argues that the business-income loss is a form of *damage* not subject to the limiting words *direct physical*. Hampden contends that because the Policy provides for a 12-month period of business income coverage, that the damage arose on May 29, 2015, one year after the lightning strike. During that time, Owners was notified of the physical damage and failed to take action to repair it. (**# 44-2 ¶¶ 18–26**.)

4

The Court begins with the observation that the Policy does not define the terms *loss* or *damage*. However, the Business Income and Extra Expense Rider, which creates and governs coverage for business income losses, provides in pertinent part: "Subject to the Limit of Insurance provisions of this endorsement, we will pay for *the actual loss of Business Income you sustain due to the necessary suspension of your operations during the period of restoration.*" (**# 35-1 at 3** (emphasis added).) This language recognizes that, unlike a physical loss, a business income loss occurs over a period of time. It defines that period as beginning when operations are suspended due to *physical loss* and continuing until the end of the *period of restoration.* (**# 35-1 at 6**.) This makes the claim for loss of business income different from a claim for a physical loss. It cannot arise until restoration is concluded. This makes sense in the context of a breach of contract claim. For there to be a cognizable breach of contract claim for failure to pay for loss of business income, the insurer must have a duty that it did not perform – here, a failure to pay. However, an insurer cannot know the amount to pay until the period of restoration is completed. It makes little sense to interpret the Policy to require the filing of a lawsuit by a date certain, when the claim being asserted may not have arisen. Indeed, such an interpretation would encourage unscrupulous insurers to delay in completing any restoration for more than two years after the physical loss occurs to prevent having to pay for the attendant business loss.

The Court finds no language in the Policy to support Hampden's interpretation – that one should assume that Owners timely attended to the repair of Hampden's machine beginning on the date it was damaged, and that the repair either took one year, or that Hampden is entitled to the maximum payment of benefits – losses over a one-year period.

Instead, following the language of the Policy, the business loss did not arise until the period of restoration was concluded. According to the record, that was in September 2015.

5

Calculating two years from that date, the filing the Complaint in this matter on April 30, 2017, was timely.

Owners also advances an argument that Hampden failed to cooperate by failing to timely submit a "proof of loss" as to the business-income claim as required by the Policy. Hampden produces no evidence that it submitted a proof of loss, and appears to concede that it did not. However, Hampden points to a letter from Owners dated July 8, 2016, in which Owners states that the letter will "serve as your Proof of Loss as what we have paid thus far: . . . Business Income and Extra Expense: $221,193.00".[3] (**# 44-6 at 1**.) This letter, Hampden argues, gave it a reasonable basis to believe that it had complied with its filing requirements under the Policy. The Court agrees. This evidence, construed in the light most favorable to Hampden, shows that Owners either considered Hampden's submissions to constructively make a Proof of Loss or waived compliance with the Policy requirement altogether. A trial is required on this claim.

**B.   Breach of the Covenant of Good Faith and Fair Dealing**

This claim is colloquially referred to an insurance "bad faith claim". Hampden contends that Owners acted unreasonably in ignoring its communications, failing to investigate its claim for nine months, resulting in an effective denial of its claim for replacement. (**# 44 at 3–4**.) As to loss of business income, Hampden contends that Owners acted unreasonably in offering to settle the claim at a lower amount than what Hampden maintains it is owed, ignoring forensic accounting information furnished by Hampden, and not basing its calculations on "what could have been" despite the Policy contemplating likely income. (**# 44 at 9–10**.) Owners contends

---

[3] None of Hampden's exhibits are labeled in the Court's ECF system or on the exhibits, themselves making it difficult to correlate the reference in the brief to the exhibits. The Court thus assumes that when Hampden cites to "Exhibit U", it means the letter quoted above despite the fact that, proceeding from where Owners left off at Exhibit R, Doc. 44-6 would be best described as Exhibit X.

that Hampden is unable to present sufficient evidence to make a *prima facie* showing as to this claim.

In Colorado, every insurance policy has an implied duty of good faith and fair dealing. *See Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003). Breach of this duty gives rise to an action in tort to recover economic and noneconomic compensatory damages and punitive damages where appropriate. *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414–15 (Colo. 2004). To establish liability for bad-faith breach of the Policy, Hampden must prove that (1) a reasonable insurer under the circumstances would have paid or otherwise settled the claim, (2) Owners either knowingly or recklessly disregarded the claim's validity, and (3) Hampden suffered a loss as a result of Owners' conduct. *Id*. at 415.

In assessing a bad faith claim, the reasonableness of an insurer's conduct is measured objectively based on industry standards. *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 342, 343 (Colo. 2004). It is reasonable for an insurer to challenge claims that are "fairly debatable." *See Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985); *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. App. 2003); *Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550, 556–57 (Colo. App. 1998) (affirming dismissal of insured's bad-faith claims because insured's claims were fairly debatable); *Brandon v. Sterling Colo. Beef Co.*, 827 P.2d 559, 561 (Colo. App. 1991). Thus, an insurer will be found to have acted in bad faith only if it has intentionally denied, failed to process, or failed to pay a claim without a reasonable basis. *Savio*, 706 P.2d at 1275; *Brandon*, 827 P.2d at 561.

The Court turns to each theory of relief and the elements upon which Hampden has the burden of proof.

### 1. *Property Damage Claim*

Although Hampden's claim is that Owners acted unreasonably in denying its "claim for replacement by ignoring its requests and failing to investigate the claim further" it is undisputed that the Policy gives Owners the option to pay the cost of repair or replacement such that choosing one over the other is not a *denial*. *See* (**# 35-1 at 14**.) So really, Hampden quarrels with the length of time that Owners took to investigate and process the claim.

Hampden refers to the Colorado Unfair Claims Settlement Practices Act, C.R.S. § 10-3-1104, as possible evidence of industry standards. Specifically, Hampden enumerates the following practices and submits evidence that corresponds to them: failure to acknowledge and act reasonably prompt upon communications, refusal to pay claim without a reasonable investigation, failure to affirm or deny coverage within a reasonable time, and not attempting in good faith to effectuate a prompt and fair settlement. *See* C.R.S. § 10-3-1104(1)(h)(II)–(VI). Though the Act "does not establish a standard of care actionable in tort, it may be used as valid, but not conclusive, evidence of industry standards". *Allen*, 102 P.3d at 344. Thus, Hampden must couple the Act's provisions with actual evidence to establish industry standards.

The affidavit of Mike Ross is evidence that Owners ignored multiple communications from Hampden. Mr. Ross states that he made "phone calls throughout the fall and winter of 2014-2015" to Owners' adjusters to "request their help", and that at times, "phone calls were not returned". (**# 44-2 ¶¶ 19–20, 24**.) "Other times, I would speak with an adjuster and be told that they would look into the system", but "Owners never followed up on those communications." (**#44-2 ¶¶ 21, 25–26**.) Mr. Ross requested permission in October or November 2014 to purchase a new paint-drying system, but he was told to wait until "Owners could confirm that the system could not be repaired." (**# 44-2 ¶ 27**.) Despite further phone calls and emails from Hampden,

Owners did not send anyone to investigate the claim until June 1, 2015.  (**# 44-2 ¶¶ 31–33**.)  Owners acknowledged in an email that the reason why things took so long "was due to delays on our end."  (**# 44-1 at 1**.)  Apparently, Owners thought the file was closed in November 2014 and the situation was complicated by personnel matters.  (**# 44-1 at 1**.)

Though Hampden does not produce an objective standard as to what a reasonable insurer would have done under the same or similar circumstances in 2014 and 2015, Owners acknowledgment in the email it which it admits that its conduct from September 2014 to June 2015 was not normal in the insurance industry.  Hampden has thus proffered evidence of what insurance industry standards or practices were — settling or otherwise handling the claim in a timely manner — and how Owners deviated from them when it failed to process Hampden's claim for months on end.[4]  The Court therefore finds that Hampden has come forward with evidence sufficient to establish the first element of its bad-faith claim — that a reasonable insurer would have paid or otherwise settled the claim under these circumstances.

The second element that Hampden must prove is that Owners acted knowingly or recklessly in disregarding Hampden's claim.  This element focuses on Owners' knowledge, evidence of which is found in the same email acknowledging the untimely processing of Hampden's claim.  (**# 44-1**.)  At a minimum, this email creates a factual issue as to whether Owners knew of or recklessly disregarded so many of Hampden's calls and emails.  Hampden has come forward with evidence sufficient to make a prima face showing as to this element as well.

---

[4] The parties argue as to whether expert testimony is required to make a *prima facie* showing, but no Colorado court has mandated as much.  Indeed, the Court can imagine circumstances in which no expert testimony is necessary – one example might be where the insurer closes the file in error and never responds to the claim.

*2. Loss of Business Income Claim*

With regard to this claim, the parties have a valuation dispute. Hampden again cites the Unfair Claims Practices Act as evidence for what the industry standards are, and refers to the report of Dr. Asaf Bernstein (**# 44-5**), who offers an opinion as to the amount of business income Hampden lost. Owners disputes both the amount calculated by Dr. Bernstein and how he reached that amount, preferring the opinion of its own expert witness, Paul DeBoer.

A Rule 702 hearing was held on January 2, 2019, at which time the Court considered both Dr. Bernstein's testimony and Owner's objections. The Court found that although Dr. Bernstein's opinion may not be very persuasive at trial, Owner's objections went to weight and did not preclude its admission. **(#54)** Thus, as to the amount of Hampden's business loss there is a genuine dispute of material fact requiring a trial.

**C. Unreasonable Delay of Payment of Covered Benefits**

Hampden also brings statutory bad-faith/unreasonable-delay claims pursuant to C.R.S. § 10-3-1115 based on both property damage and a loss of business income. Because Owners conceded that Hampden's losses were covered under the Policy, these claims are properly treated as claims for *delay* in the payment of benefits. *Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 568 (Colo. App. 2015). Under C.R.S. § 10-3-1115, an insurer who delays payment to an insured without a reasonable basis for its delay breaches its statutory duty of good faith and fair dealing. To prove a claim under the statute, Hampden must demonstrate that: (1) Owners delayed payment of benefits to it, and (2) that delay was without a reasonable basis. *See Am. Family Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185–86 (Colo. 2018).

### 1. *Property Damage Claim*

Hampden incorporates its arguments and evidence advanced for its common-law claim for bad-faith breach. As discussed above, this evidence shows that Hampden contacted Owners on numerous occasions and Owners either did not return calls and emails or said it would look into things and did not. And for the same reasons, Hampden has come forward with *prima facie* evidence of a payment delay without a reasonable basis sufficient to merit a trial on this claim.

### 2. *Loss of Business Income Claim*

Hampden also incorporates its arguments and evidence advanced for its common-law claim for bad-faith breach. Even granting that this evidence establishes unreasonable conduct, none of this evidence speaks to a delay in processing the business-income claim, as the theory for recovery presented for the bad-faith breach relies primarily on Owners acting inconsistently with the Policy in determining loss.

## V. CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment (**# 35**) is **GRANTED IN PART**. Hampden's claim for breach of contract based on property damage is **DISMISSED**. Hampden's remaining claims, except for its claim for unreasonable delay based on a loss of business income, shall proceed to trial. The parties shall jointly contact chambers within 14 days to schedule the Final Pretrial Conference.

Dated this 25th day of March, 2019.   **BY THE COURT:**

_____
Marcia S. Krieger
Senior United States District Judge