IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-1894-WJM-SKC

HAMPDEN AUTO BODY CO.,

    Plaintiff,

v.

AUTO-OWNERS INSURANCE CO.,

    Defendant.

---

## ORDER ON MOTIONS FOR RECONSIDERATION

---

This matter is before the Court on Plaintiff Hampden Auto Body Co.'s ("Hampden") Motion for Reconsideration ("Hampden's Motion") (ECF No. 66) and Defendant Auto-Owners Insurance Co.'s ("Owners") Motion for Reconsideration ("Owners's Motion") (ECF No. 63) of the March 25, 2019 Opinion and Order on Motion for Summary Judgment ("Prior Order") entered by Senior Judge Marcia S. Krieger of this District on Owners's Motion for Summary Judgment (ECF No. 35). Familiarity with the Prior Order and the facts of this case are presumed. For the reasons discussed below, the Hampden's Motion is granted, and Owners's Motion is granted in part and denied in part.

### I. BACKGROUND

**A.    Factual Background**

Given Hampden's status as the non-movant in the summary judgment motion at issue here, the following factual summary states the facts in the light most favorable to

Hampden. Hampden is an auto body repair shop that was insured under an insurance policy issued by Owners. (ECF No. 55 at 1.) On May 30, 2014, a lightning strike damaged Hampden's property, including an IWATA paint drying system. (ECF No. 63 at 2.) Hampden submitted a claim to Owners. Hampden contends that Owners ignored its phone calls and e-mails requesting help over the course of the next year. Owners eventually inspected the paint drying system in June 2015, and paid for the repair. (ECF No. 55 at 2.) The repair was ultimately completed in September 2015, with Owners paying the repair costs. (ECF No. 63 at 2.)

Without the paint drying system, Hampden's vehicle-repair time increased, reducing its capacity to serve customers. (ECF No. 66 at 2.) While the paint drying system was down, the Denver area experienced significant hailstorm activity. Hampden contends that it lost significant revenue because it was unable to take on additional hail damage work. (*Id.* at 4.)

In the fall of 2015, Owners hired Paul DeBoer of RGL Forensics to evaluate Hampden's business loss claim. (ECF No. 63 at 3; ECF No. 66 at 4.) DeBoer opined that the business income loss for the 12 months after the lightning strike was $221,193. Hampden explained to RGL Forensics that this estimate was incorrect by several million dollars because the September 2014 hail storm would have significantly increased business during the covered period. (ECF No. 66 at 4.) According to Hampden, Owners disregarded these additional facts by refusing to investigate them or adjust its business loss calculation. (*Id.*) On May 4, 2016, Owners paid Hampden $221,193. Hampden continued to believe that this amount did not reflect the "actual loss of business income . . . that would have been earned." (*Id.*)

**B. Procedural History and Prior Order**

Hampden filed this lawsuit in state court on April 30, 2017, alleging breach of contract for failure to pay for property damage and business losses under the insurance policy, common law claims for bad faith breach of an insurance contract ("bad faith"), and unreasonable delay or denial of insurance benefits in violation of Colorado Revised Statutes §§ 10-4-1115 and -1116 ("unreasonable delay/denial"). (ECF No. 4.) Owners removed the suit to federal court on August 4, 2017. (ECF No. 1.)

On May 21, 2018, Owners moved for summary judgment on all claims. (ECF No. 35.) On March 25, 2019, Judge Krieger issued the Prior Order that granted summary judgment in favor of Owners on the breach of contract claim based on property damage and the unreasonable delay/denial claim based on business losses, and denied the remainder of the summary judgment motion. (ECF No. 55 at 4, 11.) On April 2, 2019, the case was reassigned due to Judge Krieger's unavailability (ECF No. 56), and was eventually drawn to the undersigned (ECF No. 57).

On April 10, 2019, Owners filed its motion for reconsideration challenging Judge Krieger's rulings (or lack thereof) on the breach of contract claim for business losses, the bad faith claim for business losses, and the statute of limitations on the bad faith claim and unreasonable delay/denial claim related to property damages. (ECF No. 63.) On April 12, 2019, Hampden filed its motion for reconsideration challenging the grant of summary judgment on its unreasonable delay/denial claim for business losses. (ECF No. 66.) No party challenges the grant of summary judgment on the breach of contract claim for property damage.

## II. LEGAL STANDARD

### A. Motion for Reconsideration Standard

While the Federal Rules of Civil Procedure do not directly provide for a motion to reconsider an interlocutory ruling, district courts have broad discretion to reconsider their interlocutory rulings before the entry of judgment. *See Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) ("[D]istrict courts generally remain free to reconsider their earlier interlocutory orders."); Fed. R. Civ. P. 54(b) ("[A]ny order . . . that adjudicates fewer than all the claim or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment."). Thus, a court can alter its interlocutory orders even where the more stringent requirements applicable to a motion to alter or amend a final judgment under Rule 59(e) or a motion for relief from judgment brought pursuant to Rule 60(b) are not satisfied. *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1024 (10th Cir. 2018).

"Notwithstanding the district court's broad discretion to alter its interlocutory orders, the motion to reconsider 'is not at the disposal of parties who want to rehash old arguments.'" *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000) (quoting *Young v. Murphy*, 161 F.R.D. 61, 62 (N.D. Ill. 1995)). "Rather, as a practical matter, to succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Id.* (internal quotation marks omitted and alterations incorporated). Even under this lower standard, "[a] motion to reconsider should be denied unless it clearly demonstrates manifest error of law or fact or presents newly discovered

evidence." *Id*. (alterations incorporated); *see Sanchez v. Hartley*, 2014 WL 4852251, at *2 (D. Colo. Sept. 30, 2014) (refusing to reconsider an interlocutory order where the defendants did not show "an intervening change in the law, newly discovered evidence, or the need to correct clear error or manifest injustice"). The Court may be guided by Rules 59 and 60 standards in deciding whether to alter or vacate an interlocutory order. *Perkins v. Fed. Fruit & Produce Co. Inc.*, 945 F. Supp. 2d 1225, 1232 (D. Colo. 2013).

**B.     Motion for Summary Judgment Standard**

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Stone v. Autoliv ASP, Inc*., 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l General Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## III. ANALYSIS

A. **Owners's Motion (ECF No. 63)**

 1. <u>Breach of Contract Claim Based on Business Losses</u>

  a. *Claim for business loss brought within limitations period*

Owners argues that the Prior Order misapprehended the law and the facts when interpreting the phrase "direct physical loss or damage" in the contract's "Legal Action Against Us" provision. (ECF No. 63 at 7–9.) The "Legal Action Against Us" provision of the contract provides that "[n]o one may bring a legal action against us under this Coverage Part unless * * * [t]he action is brought within 2 years after the date on which the direct physical loss or damage occurred." (ECF No. 35-1 at 20.) The Prior Order found that the breach of contract claim based on business loss was timely because "the business loss did not arise until the period of restoration was concluded . . . in September 2015." (ECF No. 55 at 5.)

Owners argues that Hampden's breach of contract claim based on business loss is barred by the time limitation provision of the contract. Owners contends that "[a]ll other courts that have considered this issue have determined that similar provisions are equally applicable to business income claims and are predicated on the actual physical loss, not the end of the period of restoration," and cites cases from the Second Circuit, Northern District of Georgia, District of Oregon, and New York and Wisconsin state courts. (*Id.* at 7–8.) Of course, none of these cases are binding on this Court. Moreover, Owners raised the same argument at summary judgment (ECF No. 50 at 9–11), and it was rejected by Judge Krieger (ECF No. 55 at 5–6). Owners attempts to

rehash an old argument duly considered and previously rejected by the Court. *See Nat'l Bus. Brokers*, 115 F. Supp. 2d at 1256. The Court thus denies Owners's Motion, and reaffirms the Prior Order's ruling that the breach of contract claim for business losses was timely.

      b.  *Cooperation in investigation or settlement of the claim*

  The Prior Order failed to consider Owners's argument that Hampden failed to cooperate by not "providing evidence in the form of website data that is foundational to Plaintiff's forensic accountant's report." (ECF No. 63 at 9.) In the interest of justice, the Court grants Owners's Motion to directly consider whether Hampden failed to cooperate.

  The policy required that Hampden submit a proof of loss and "[c]ooperate with us in the investigation or settlement of the claim." (ECF No. 35-1 at 14.) Taking the facts in the light most favorable to Hampden, Mike Ross provided the data requested by DeBoer, the analyst Owners hired to evaluate Hampden's lost business income. (ECF No. 35-3 at 7 ("I provided everything that he asked of us."); ECF No. 44-2 at 5, ¶¶ 44–45.) DeBoer's report states that his review was limited "to the available books, records, and other pertinent information." (ECF No. 35-15 at 1.) Nowhere does DeBoer suggest that Hampden refused to provide any data or information that DeBoer requested. On this record, the Court cannot conclude as a matter of law that Hampden breached the contract by failing to provide website data. Accordingly, the breach of contract claim based on business losses will proceed to trial.

  2.  <u>Bad Faith Claim Based on Business Losses</u>

  The Prior Order did not address Owners's argument that Hampden cannot prove

7

that Owners knowingly or recklessly disregarded the validity of Hampden's business loss claim. (ECF No. 55 at 10.) In the interest of justice, the Court grants Owners's Motion and will consider Owners's argument regarding knowing or reckless disregard.

A bad faith claim requires that Hampden prove that Owners acted unreasonably under the circumstances and "either knowingly or recklessly disregarded the validity of [its] claim." *Goodson v. Am. Std. Ins. Co. of Wisc*, 89 P.3d 409, 415 (Colo. 2004); *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1272 (Colo. 1985). Hampden informed Owners and DeBoer that past sales would not appropriately predict business losses because a major weather event during the year of covered losses would have greatly increased Hampden's business. (ECF No. 44 at 9–10; ECF No. 44-7; ECF No. 45-3; ECF No. 44-2 at 5–7, ¶¶ 47–65.) Despite this knowledge, Owners continued to use past sales to predict business losses, and did not sufficiently (in Hampden's view) take the September 2014 hailstorm into account. (ECF No. 45-2 ("In calculating losses of this nature, we most[ly] base our calculations on historical date and not what could have been."); ECF No. 44-9 ("[P]lease provide us loss figures that show what the loss would have been using historical records only and not using the insured's speculations on their believed increase in business"); ECF No. 35-15.)

Taking the facts and inferences therefrom in the light most favorable to Hampden, a reasonable jury could find that Owners knowingly or recklessly disregarded the fact that its conduct in evaluating the claim was unreasonable. Accordingly, the Court denies summary judgment on the bad faith claim on business losses.

3. <u>Statute of Limitations</u>

Owners argues that it properly raised a statute of limitations defense on the bad

faith and unreasonable delay/denial claims arising out of property damage, that the Prior Order ignored the issue, and that the Court should now consider the issue on Owners's Motion. (ECF No. 63 at 9–10.)

In its Motion for Summary Judgment filed on May 21, 2018, Owners initially argued that the unreasonable delay/denial claims were subject to a one-year statute of limitations, and the claims were time barred. (ECF No. 35 at 20–24.) That motion only raised the timeliness of Hampden's statutory claims, and not of its common law claims. (*See* ECF No. 35 at 21 ("The undisputed facts show that Hampden's *statutory claims* are time barred under the applicable one-year statute of limitations." (emphasis added)).) It also noted that the unreasonable delay/denial claim based on property damage "accrued, at the latest, as of September 3, 2015" and that the unreasonable delay/denial claim based on lost business income "accrued on or before May 1, 2016." (*Id.* at 23–24.)

Eight days after Owners filed its Motion for Summary Judgment, the Colorado Supreme Court held that the one-year statute of limitations did not apply to unreasonable delay/denial claims. *Rooftop Restoration, Inc. v. Am. Family Mut. Ins. Co.*, 418 P.3d 1173, 1177 (Colo. 2018). Owners advised the Court of the Colorado Supreme Court's decision and "provide[d] the Court and Plaintiff with notice that it withdraws the argument" regarding the one-year statute of limitations. (ECF No. 38 at 2.)

In Owners's reply in support of the Motion for Summary Judgment, it argued that bad faith and unreasonable delay/denial claims premised on property damage were barred by a two-year statute of limitations to the extent that the claims were premised

9

on phone calls ignored in the fall of 2014 and winter of 2015.[1]  (ECF No. 50 at 6–7, 9.) The reply did not address the statute of limitations for the bad faith or unreasonable delay/denial claims premised on business losses.

Arguments not raised or inadequately developed in an opening brief are waived. *United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (deeming waived an argument inadequately developed in opening brief); *Thompson R2-J Sch. Dist. v. Luke P., ex rel. Jeff P.*, 540 F.3d 1143, 1148 n.3 (10th Cir. 2008) (same); *Rojem v. Gibson*, 245 F.3d 1130, 1141 n.8 (10th Cir. 2001) (same).  Owners withdrew its statute of limitations argument in the Motion for Summary Judgment, and did not ask the Court for an opportunity to further brief whether a two-year statute of limitation precluded the claims.  The Court finds that the statute of limitations argument was not raised in the opening brief (after Owners withdrew the claim) and was thus forfeited.  And because the two-year statute of limitations argument was not properly raised in the Motion for Summary Judgment, Judge Krieger did not err in failing to address it in the Prior Order. Owners cannot attempt to raise a statute of limitations argument now in its motion for

---

[1] A review of summary judgment materials shows that Hampden's bad faith and unreasonable delay/denial claims for property damage are not predicated only on phone calls ignored in the fall of 2014 and winter of 2015, as Owners suggests.  Ross's affidavit states that calls made in the fall of 2014 and winter of 2015 were, at times, not returned.  (ECF No. 44-2 at 3, ¶¶ 19–20.)  However, Ross sometimes spoke with an adjuster, who informed him that Owners would investigate the issue, although Owners regularly failed to follow up. (*Id.* ¶¶ 25–26.)  This pattern became apparent "as the months dragged on." (*Id.* ¶ 31.)  Taken in the light most favorable to Hampden, Owners's alleged conduct—at times ignoring calls and at other times promising action but ultimately delaying—was undertaken over the span of many months, and became apparent when Owners admitted to mistakenly thinking the claim was settled when it was not.  (*See* ECF No. 44-1 at 1.)  Moreover, Owners seemingly conceded in the Motion for Summary Judgment that the bad faith and unreasonable delay/denial claims accrued as late as September 3, 2015 (property damage) or May 1, 2016 (business income). On these facts, the Court cannot conclude as a matter of law that Hampden knew or should have known of Owners's alleged bad faith or unreasonable delay/denial as of April 30, 2015.

reconsideration. *See Matosantos Commercial Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1209 (10th Cir. 2001) ("A motion for reconsideration is not, however, an opportunity for the losing party to raise new arguments that could have been presented originally."). The Court thus denies Owners's Motion with respect to the statute of limitations argument.

**B.     Hampden's Motion (ECF No. 66)**

Hampden asks the Court to reconsider the Prior Order's grant of summary judgment on its unreasonable delay/denial claim for business losses, which reads in its entirety:

> Hampden also brings statutory bad-faith/unreasonable-delay claims pursuant to C.R.S. § 10-3-1115 based on both property damage and a loss of business income. Because Owners conceded that Hampden's losses were covered under the Policy, these claims are properly treated as claims for *delay* in the payment of benefits. *Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 568 (Colo. App. 2015). Under C.R.S. § 10-3-1115, an insurer who delays payment to an insured without a reasonable basis for its delay breaches its statutory duty of good faith and fair dealing. To prove a claim under the statute, Hampden must demonstrate that: (1) Owners delayed payment of benefits to it, and (2) that delay was without a reasonable basis. *See Am. Family Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185–86 (Colo. 2018).
>
> * * *
>
> ***2. Loss of Business Income Claim***
> Hampden also incorporates its arguments and evidence advanced for its common-law claim for bad-faith breach. Even granting that this evidence establishes unreasonable conduct, none of this evidence speaks to a delay in processing the business-income claim, as the theory for recovery presented for the bad-faith breach relies primarily on Owners acting inconsistently with the Policy in

11

determining loss.

(ECF No. 55 at 9–10.)

Hampden contends that the Prior Order's melding of "delay in processing the claim" and "delay of payment" is based on a misapprehension of the facts and controlling law, and effects a manifest injustice to Hampden. (ECF No. 66 at 5.) Hampden also contends that the standard for a statutory unreasonable delay/denial claim is lower than that of a common law bad faith claim, and that if its bad faith claim proceeds, its unreasonable delay/denial claim should as well. (*Id.* at 6.) Owners's response rests on the viability of the bad faith claim for business losses: Owners contends that Hampden has failed to put forth evidence that Owners delayed payment of business losses without a reasonable basis, and thus both the bad faith and unreasonable delay/denial claims based on business losses fail. (ECF No. 67 at 6, 8 ("Because the common law bad faith [claim] cannot stand, Plaintiff's foundational argument collapses.").)

The Court grants Hampden's motion to reconsider the prior disposition of this claim because the Prior Order blurred the distinction between delay in processing and a delay in payment of the claim. Relying on *Soicher v. State Farm Mutual Automobile Insurance Co.*, 351 P.3d 559 (Colo. App. 2015), the Prior Order concluded that Hampden's unreasonable delay/denial business loss claim was one for delay, rather than denial, because Owners conceded that Hampden's business losses were covered by the policy. (ECF No. 55 at 10.) *Soicher* held that "a plaintiff can argue that benefits were unreasonably denied when an insurer denies a claim outright, and the plaintiff can assert unreasonable delay when the insurer pays on a claim but disputes the value of

12

that claim, thereby delaying payment of the claim's full value." 351 P.3d at 568.[2]  In that case, the plaintiff argued that the insurance company had unreasonably delayed paying the benefits that the parties agreed on (a delay in processing the payment), and also unreasonably delayed paying to remaining disputed amount (a delay in payment of disputed benefits).  *Id.* at 568–69.  The Prior Order focused only on the delay in processing the payment, and ignored Hampden's argument that Owners delayed payment of disputed benefits.  The Court will therefore reconsider whether Owners delayed the payment of the disputed amount.

To succeed on an unreasonable delay/denial claim, Hampden must show that Owners delayed payment of benefits, and that the delay was without a reasonable basis.  *Barriga*, 418 P.3d at 1185–86.  Here, the Prior Order found that there is a valuation dispute.  (ECF No. 55 at 10.)  Taking the facts in the light most favorable to Hampden, a reasonable jury could conclude that Hampden's business losses were far greater than Owners's valuation of them, and thus Owners has delayed payment of benefits to Hampden.

Although Owners disagrees, Hampden has also put forth evidence that Owners's delay in payment of the remainder of benefits was without a reasonable basis.  Again taking facts and inferences in the light most favorable to Hampden, Owners continued to significantly underestimate the market for auto repair work after the hailstorm in

---

[2] The Court could also conceive of another way of distinguishing between delay and denial claims: "delay" meaning delay in processing a claim, as the Prior Order concluded, and "denial" meaning a refusal to pay part or all of a claim.  Under this view, Hampden has a claim for partial denial under the statute, but no claim for delay.  In either case, the Court must evaluate whether the delay in paying the disputed amount (whether that is characterized as delay or partial denial) is actionable under the statute.

2014, thereby undervaluing Hampden's business losses. (ECF No. 45-2 ("In calculating losses of this nature, we most[ly] base our calculations on historical date and not what could have been."); ECF No. 44-9 ("[P]lease provide us loss figures that show what the loss would have been using historical records only and not using the insured's speculations on their believed increase in business"); ECF No. 35-15.) Hampden therefore has put forth sufficient evidence to state an unreasonable delay/denial claim on business losses, and the Prior Order's dismissal of this claim was in error.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant Auto-Owners Insurance Co.'s Motion for Reconsideration (ECF No. 63) is GRANTED IN PART, insofar as the Court directly considers several issues not decided by Judge Krieger, but DENIED as to the remainder of the motion;

2. Plaintiff Hampden Auto Body Co.'s Motion for Reconsideration (ECF No. 66) is GRANTED;

3. As a result of the Court's rulings in this Order on the motions for reconsideration, all claims asserted in Hampden's complaint will proceed to trial, other than its claim of breach of contract with respect to its alleged property damage; and

4. In accordance with ECF No. 62, the parties are DIRECTED to contact the Chambers of U.S. Magistrate Judge S. Kato Crews within 72 hours of receiving this Order to schedule a Final Pretrial Conference.

Dated this 4th day of February, 2020.

BY THE COURT:

_____
William J. Martinez
United States District Judge